## Swift & Company v. Andrew Mutter.

### Gen. No. 4,382.

1. BURDEN OF PROOF—*when, not upon the plaintiff.* It is error to instruct the jury that the burden of proof is upon the plaintiff where it appears that one of the two material issues in the case, namely, delivery of merchandise, has been conceded by the defendant; the other material issue being one of payment, as to which the burden was upon the defendant.

2. RECEIPT—*when instructions upon value of, as evidence of payment, are improper.* Instructions which treat a receipt as if it had expressly acknowledged payment in full of all the items upon the bill, are improper where, as a matter of fact, there appeared from the face

of the bill that it was doubtful as to whether or not the notation of payment thereon was intended as evidence of the payment of the whole or some part of such bill.

Action commenced before justice of the peace. Appeal from the Circuit Court of La Salle County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed August 24, 1904.

McDOUGALL & CHAPMAN, for appellant.

BROWNE & WILEY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Swift & Company, a corporation, here appeals from a judgment against it for costs in favor of Andrew Mutter, defendant, in a suit brought by it to recover $34.84 for meats sold and delivered by it to defendant, a dealer in meats. At the trial plaintiff proved the sale of the meats and the price, and asked its witness about the delivery, when defendant's attorney said, "There is no question about that." Plaintiff then rested. Defendant testified: "I got that meat all right;" and again, "There was nothing disputed about the bill; the bill was correct;" and again, "The bill was correct;" and again, "I got the meat; there was no kick coming on the meat; the meat was all right." Defendant offered no proof questioning the correctness of the bill. The sole defense was payment. Defendant testified he paid Piper, plaintiff's agent, $73.29 on April 17, 1902, at his shop in Ottawa, and that Piper gave him therefor a receipted bill hereinafter discussed, the first item of which was said bill of $34.84 under date of March 11. Piper testified he was in Chicago and not in Ottawa on that day, and received no money from defendant that day, but that on April 22, defendant paid him $34.82, made up of a balance of $14.63 on a bill of April 1, a bill of April 14 for $9.19, and a bill of April 16 for $11, and that no part of said bill of March 11 for $34.84 was ever paid him.

The court gave for defendant instruction number eight, to the effect that the burden of proof was upon plaintiff, and it was for plaintiff to prove its case by a preponder-

ance or greater weight of the evidence, and if the jury
found that the evidence bearing upon plaintiff's case was
evenly balanced or preponderated in favor of defendant,
then plaintiff could not recover, and the jury should find
for defendant.    This was correct as applied to a case where
plaintiff's claim was contested.    It is also true defendant
did not by any formal waiver release plaintiff from the
necessity of proving its case.    But defendant's attorney
had caused plaintiff to cease proof on the subject of the
delivery of the meats by saying there was no question
about that, and defendant had repeatedly conceded the cor-
rectness of the bill during his examination, and had offered
no proof to the contrary.    Plaintiff's claim that it had sold
and delivered to defendant meats of the value of $34.84
was established and not controverted.    If the jury had re-
turned a special verdict that plaintiff had not made out
its case by a preponderance of the testimony, that verdict
could not have been sustained.    The only question for the
jury to decide was whether defendant had paid this bill.
That was the only question upon which the jury had any
need to know where the burden of proof rested, or what
the effect would be if either party had not the greater
weight of evidence.    The burden of proof on that subject
rested upon defendant. . The instruction above stated would
be likely to lead the jury to understand that upon this sole
controverted question of fact the burden was upon plaintiff.
This was especially liable to be the effect of that instruc-
tion in view of what occurred relating to the first given
instruction requested by plaintiff, which told the jury that
the burden of proof to show payment was upon the defend-
ant.    After the jury had retired, but before they had seen
or read the instructions, the court caused them to be re-
turned into court and said to them :  " The first instruction
I read will not be given; the other instructions stand as
they were read."    The court then removed instruction
eleven from the instructions previously given, and the jury
again retired, carrying with them the remaining instruc-
tions which had been given, including said first instruction.

The eleventh, which the court removed, was the last instruction in the order in which they were arranged and given, and no doubt the court intended to say to the jury that the *last* instruction read to them would not be given, and it may be the jury noticed the mistake. But what the court actually said was that the *first* instruction read would not be given. That was the only instruction which placed any burden of proof upon defendant, and if the jury took the trial judge to mean what he said, and treated the first instruction as not given, they could hardly fail to interpret the eighth instruction as casting upon plaintiff the burden of proof upon the only issue of fact they had to decide, viz., whether defendant had paid this bill.

There was much controversy over a statement of account with an endorsement of payment at the bottom which Piper delivered to defendant when defendant made the payment, the amount of which is here in dispute. The original has been certified to us for inspection. Its appearance cannot be reproduced here. It is on a printed form. There are upòn it three charges under the dates of March 11 (the bill here sued upon) and April 1 and 14; these are added, and a credit of merchandise deducted, showing a balance of $58.66 due from defendant to plaintiff. These entries are in ink. Beginning on the third line below the last line of ink writing and figures, the following is written in blue pencil: "Bal. 14.63 on bill 4–1–1463." Below that is the following: "Paid 4–22–1902 Swift and Company per W. J. Piper." The date and signature of Piper are in blue pencil exactly corresponding to the entry just above it. The rest of the last quoted sentence was produced by a red ink stamp. That was all that was upon the paper when delivered to defendant, but after he received it he placed in black pencil below the blue pencil figures above quoted, the figures, "$73.29." He obtained that result by adding $14.63 to the previous ink balance of $58.66; but that was a mistake on his part, as the $14.63 was already included in the ink balance above, of $58.66. Defendant testified he paid Piper $73.29. Piper was not allowed to state fully what

he intended by the stamp of payment at the bottom and
no doubt the court ruled correctly as the question was put,
but he stated enough to make it apparent that his meaning
was that what was written in blue pencil stood by itself,
and that the words "paid," etc., only referred to the item
of $13.46 above quoted.   He denies that it was given to
cover the first item on the statement, being the bill here in
suit.    The words, " Paid 4–22–1902," etc., do not show how
much was paid nor that all that preceded on that statement
was paid.    The natural interpretation of such an endorse-
ment would ordinarily be that all that preceded was paid in
full, but where, as here, the stamped receipt is filled out in
the same blue pencil writing as a written part above the re-
ceipt but below the bill proper, it is entirely possible that
the words " paid," etc., were intended to include only that
part written in blue pencil below the bill proper, and not
the whole bill.    Another thing appearing upon the bill adds
strength to the claim that that was what was intended.
The item of April 1 in ink above, the date being written
" 4–1," is $29.05.    The credit for merchandise already re-
ferred to is $14.42.    The balance of $14.63, written in blue
pencil, quoted above, was obviously obtained by subtracting
the credit from the charge of April 1.    Now, if defendant
was then paying the entire bill, whether the true balance
of $58.66 or the incorrect balance of $73.29 which defend-
ant afterwards wrote below, there was no occasion to ascer-
tain and place upon the bill in blue pencil, apparently
indelible, the fact that the deduction of the credit of mer-
chandise from the charge of April 1 left a balance of $14.63,
for that was already included in the balance of $58.66
written above in ink, and the whole amount was then paid
according to defendant's testimony.    But if defendant was
then going to pay the bill on that particular item and re-
ceive this as a receipt for that item only, then the purpose
of that blue pencil writing below the bill is explained.
Piper testified he had there present three bills against de-
fendant for collection, meaning, as we understand him, the
paper now in question as a bill for $14.63, a bill for the

charge of April 14, and another bill of April 16, the three items which a book in evidence shows he collected from defendant and remitted on April 22. Piper testified an explanation of what the receipt covered was written lower down on the paper, and that that part had been removed. The lower edge of this paper is not straight, and some part of the paper has apparently been removed.

In this state of the proof the court gave the ninth and tenth instructions at defendant's request, wherein the jury were told that a receipt may be explained by parol, but the proof by which it is done must be clear and satisfactory; that a written receipt is evidence of the highest and most satisfactory character, and to do away with its force the testimony must be convincing, and the burden rests upon the party attempting the explanation; that a receipt signed by an agent is evidence of the most satisfactory character against his principal of what the receipt shows upon its face or purports to contain, and to overcome the same the testimony should be convincing, and the burden of proof to contradict such receipt rests upon the party disputing it. Assuming that these instructions stated the law applicable to an ordinary receipt for a specified sum of money and to a receipt which specifies that it is in full satisfaction for a particular bill or account or claim, we are of opinion they were calculated to mislead the jury with reference to the paper above described. Plaintiff was not seeking to contradict it, or to give it an explanation or interpretation wholly inconsistent with its face. The paper being in the peculiar form above described, and silent as to what or how much was paid, the question before the jury was, what did the parties mean by what is expressed upon this instrument, and that depends upon what was paid and what was said and done at the time. It is the function of the jury to determine from the evidence the purpose, intention and understanding of the parties in giving and accepting a receipt. 23 Am. & Eng. Ency. of Law, 2nd ed., 987; Bartholomew v. Bartholomew, 18 Ill. 326; Same v. Same, 24 Ill. 200; Daniels v. Burso, 40 Ill. 307; Herkimer v. Nigh,

10 Ill. App. 372. This is especially the case where the instrument is uncertain upon its face, or is so written as to raise doubts as to its meaning, and needs evidence of the circumstances under which it was signed to aid in ascertaining its true meaning. These instructions treated this paper as if it had expressly acknowledged payment in full of all the items upon the bill, whereas it was an acknowledgment that some unstated amount had been paid, and there was that upon the face of the bill which made it doubtful what was intended.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*